Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>Recurrido<br><br>v.<br><br>CARLOS D. LÓPEZ BONILLA<br><br>Recurrente | KLRA202400089 | Revisión Judicial (Ley de Ética Gubernamental)<br><br>Sobre: Violación a los Incisos (g), (h) y (s) del Artículo 4.2 de la Ley 1-2012, según enmendada, y a los Incisos (h) e (i) del Artículo 3.2 de la Ley Núm. 12 del 24 de julio de 1985<br><br>Caso Número: 23-17 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 9 de septiembre de 2025.

El recurrente, Carlos D. López Bonilla es el Alcalde del Municipio de Rincón. El 28 de julio de 2022, la Oficina de Ética Gubernamental (OEG) presentó una querella en su contra por violaciones a la derogada Ley Núm. 12 del 24 de julio de 1985, entre ellas, al Art. 3.2(i), 3 LPRA sec. 1821. Al señor Alcalde también se le imputó violar los incisos (g) y (h) del Art. 4.2, 3 LPRA sec. 1857 de la Ley Núm. 1-2012, según enmendada. La OEG posteriormente presentó una querella enmendada. Al recurrente se le imputó que intervino en el nombramiento de su primo hermano como Policía Municipal del ayuntamiento que dirige, y para que se le concedieran aumentos de sueldo y el pago de horas extras, licencias de vacaciones y del exceso de esas licencias. Los hechos imputados ocurrieron del año 2004 al 2011 y del 2012 al presente.

La OEG pidió la adjudicación sumaria de la querella, debido a que no existía controversia de hechos esenciales. El recurrente se opuso y alegó la necesidad de una vista evidenciaria. Según el recurrente, la investigación no cumplió con los términos establecidos en el Art. 7.1.

Ambas partes presentaron escritos en apoyo a sus respectivas posiciones.

La OEG emitió su informe en el que determinó los hechos siguientes.

El recurrente es Alcalde del Municipio de Rincón desde el 8 de enero de 2001 al presente, y la máxima autoridad de la Rama Ejecutiva del gobierno municipal. Como Alcalde le corresponde la dirección, administración y fiscalización. Una de sus funciones es nombrar a todos los funcionarios y empleados del Municipio de Rincón. El señor Jason Obrian López Noriega es su primo hermano. El padre del recurrente es hermano de vínculo sencillo del padre de Jason Obrian López Noriega. El 28 de mayo de 2004, el recurrente pidió a la OEG una dispensa para el nombramiento, en la que informó la aprobación de un Código de Orden Público y la asignación de fondos para reclutar diez policías municipales. Además, informó que el señor López Noriega se encontraba en los adiestramientos de la Academia de la Policía de Puerto Rico y que entre ambos existe una relación de parentesco, dentro de los grados de consanguinidad prohibidos. El Alcalde pidió la intervención de la OEG para determinar la acción a seguir. No obstante, antes de que la OEG se expresara, el recurrente nombró a su primo hermano al puesto de policía municipal, con estatus probatorio y un salario de $927.00 mensuales. Determinaciones de hecho 1-9.

El 25 de octubre de 2004, la OEG respondió la solicitud de dispensa basada en (1) una comunicación del 18 de noviembre de 2003, en la que el recurrente delegó a la Directora de la

Administración de Recursos Humanos del Municipio todo el proceso de evaluación y reclutamiento para cubrir los puestos de policía municipal, debido a que su primo hermano era uno de los solicitantes (2) y en una certificación del 8 de septiembre de 2004, en la que el recurrente indicó que no participó en el proceso de reclutamiento y selección de candidatos para la convocatoria en la que se seleccionó a su primo hermano. Determinaciones de hecho 10.

El Subdirector de la OEG concluyó que:

La relación de parentesco existente en el presente caso sugiere la posibilidad de que sea necesario obtener una dispensa previa a que el Municipio lleve a cabo dicho nombramiento. No obstante, es menester señalar, que la prohibición del Artículo 3.2 (i) no aplica a nombramientos en un puesto de carrera, para el que la persona haya tenido la oportunidad de competir en igualdad de condiciones con otros aspirantes mediante un proceso de selección a base de pruebas, exámenes o evaluaciones de preparación y experiencia, y se haya determinado objetivamente que es el candidato idóneo o mejor cualificado en el registro de elegibles para el puesto en cuestión y el pariente con facultad no haya intervenido.

Conforme lo anterior, concluimos que no es necesaria una dispensa bajo el Artículo 3.2 (i) citado, por tratarse de un nombramiento en un puesto de carrera. ***nota omitida***

Es necesario que usted, en su carácter de Alcalde, no intervenga de forma alguna en el proceso administrativo que se lleva a cabo para el nombramiento del señor López Noriega.

Para ello tendrá que delegar en una persona con autoridad plena para actuar la facultad de pasar juicio, recomendar y/o tomar decisiones sobre dicho nombramiento y/o futuras transacciones relacionadas al señor López Noriega. Determinación de Hecho 11.

Según consta en el informe de la Oficial Examinadora (OE), del año 2004 al 2011, el recurrente:

(1) firmó el cambio de puesto de su primo de probatorio a regular, dentro del servicio de carrera y con un nuevo sueldo mensual de $1,033.00 efectivo desde el 1 de septiembre de 2006.
   a. aprobó 30 días de vacaciones a su primo del 9 de abril hasta el 21 de mayo de 2007.
   b. firmó el aumento de sueldo de $50.00 mensuales de su primo que incrementó su

salario a $1,083.00 efectivo desde el 1 de julio de 2007.

c. firmó aumento de sueldo de su primo que incrementó su salario a $1,208.00 mensuales efectivo desde el 1 de julio de 2008.

d. aprobó quince días de vacaciones de su primo del 2 al 20 de marzo de 2009.

e. firmó el aumento de sueldo de su primo de $100.00 que incrementó su salario a $1,308.00 mensuales efectivo el 1 de julio de 2009.

f. aprobó la Solicitud de Licencia de Feriados Acumulados de su primo desde el 29 de noviembre al 17 de diciembre de 2010.

g. aprobó la licencia de vacaciones del 6 septiembre al 18 de octubre de 2011.

Determinación de hecho número 12.

La OE determinó que, del 2012 al presente, el recurrente:

a. aprobó las vacaciones de su primo del 8 de junio hasta el 17 de julio de 2015.

b. aprobó las vacaciones de su primo del 31 de mayo hasta el 12 de julio de 2016.

c. firmó el aumento de sueldo de su primo que incrementó su salario a $1,458.00 mensuales.

d. firmó las vacaciones de su primo del 15 de febrero hasta el 9 de marzo de 2018

e. aprobó las vacaciones de su primo del 4 de enero hasta el 1 de febrero de 2021.

f. firmó la comunicación mediante la cual concedió a su primo tres pasos por mérito que aumentaron su salario a $1,574.00 mensuales.

Determinación de hecho 13.

Por último, la OE determinó que la OEG no emitió ninguna autorización ni dispensa para que el recurrente interviniere en transacciones de personal sobre su primo hermano. La OE advirtió que el recurrente ha tomado varios cursos de la Ley de Ética Gubernamental de 1985 y la LOOEG.

La OE concluyó que la investigación de la querella se realizó dentro de los términos establecidos en la ley. La funcionaria no encontró evidencia del inicio de una investigación que activara la aplicación del Art. 7.1, *supra*. Según la OE, la querella fue el resultado de una auditoría de la AAIF. Por esa razón concluyó que la investigación se solicitó formalmente el 18 de abril de 2022 cuando la AAIF refirió el asunto a AIPA. La OE determinó que el término de noventa (90) días para culminar la investigación

preliminar venció el 18 de julio de 2022. No obstante, advirtió que la OEG podía solicitar una prórroga de noventa (90) días o comenzar una investigación exhaustiva. Según la OE, la recurrida tenía dos años y medio para culminar la investigación. La OE determinó que la OEG presentó la querella a tiempo, porque lo hizo a solo diez (10) días de vencido el primer término de la investigación preliminar. A la OE le pareció razonable el término de diez (10) días porque no existe un plazo específico para presentar una querella, luego de culminada una investigación.

La OE recomendó el archivo de la imputación de violación al inciso (h) del Art. 3.2 de la Ley de Ética Gubernamental de 1985. No obstante, determinó que el recurrente violó el Art. 3.2(i), *supra*, que prohíbe el nepotismo. Según la OE, para que esa violación se configure es necesario que, un funcionario público nombre, promueva o ascienda a un puesto de empleado público o contrate, cualquier persona que sea su pariente dentro del cuarto grado de consanguinidad o segundo por afinidad. La funcionaria concluyó que todos esos requisitos se configuraron, debido a que el recurrente intervino en el nombramiento de su primo, al firmar la notificación de nombramiento y juramento.

Según la OE, el recurrente violó además, el inciso (g) del Art. 4.2 de la ley actual porque: (1) es un servidor público y (2) existe evidencia robusta y convincente de que intervino directamente desde el 2012 al presente en seis (6) transacciones relacionadas a su primo hermano, que consistieron en cuatro (4) licencias de vacaciones, un informe de cambio por aumento de sueldo y la concesión de tres (3) pasos por mérito. La OE advirtió que los primos hermanos están incluidos en la definición de pariente contenida en la ley actual. La funcionaria determinó que el recurrente atentó contra el interés público, porque hizo concesiones para el beneficio de los intereses económicos de un pariente. Según la OE, estos

intereses chocaban con el interés público de evitar el trato preferente en las concesiones gubernamentales.

Por otra parte, la OE concluyó que el recurrente violó el inciso (h) del Art. 4.2, *supra.* La funcionaria advirtió que esa violación se configura, cuando la autoridad nominadora interviene directa o indirectamente en el ascenso o en la remuneración o contratación de un pariente. A la OE le quedó claro que el recurrente intervino en la concesión de remuneraciones para su primo, porque el 1 de julio de 2016 le autorizó un aumento de sueldo de $150. El 22 de junio de 2021 le concedió tres (3) pasos por mérito, sin autorización de la OEG. La funcionaria no encontró ninguna excepción, para concluir que esas transacciones cumplieron con el principio del mérito o se autorizaron en una ordenanza municipal. Según la OE, el recurrente no redactó el documento de inhibición que exige la ley e intervino directamente en la remuneración de un pariente. La OE determinó que los aumentos de sueldo y las licencias de vacaciones no son acciones ministeriales y están expresamente prohibidas por ley. Además, advirtió que el Art. 3.09 de la Ley de Municipios Autónomos le permitía al recurrente delegar esos asuntos a otro servidor público.

Por último, la OE concluyó que la OEG no cumplió con el estándar de prueba robusta y convincente requerido para establecer que el recurrente violó el inciso (s) del Art. 4.2. Según la OE, la OEG se limitó a argumentar que las intervenciones del Alcalde en los asuntos de su primo pusieron en duda su integridad e imparcialidad en el desempeño de la función gubernamental. La OE advirtió que la OEG, ni siquiera mencionó el inciso (s) en la moción de adjudicación sumaria ni en la réplica a la oposición.

La funcionaria recomendó a la Dirección Ejecutiva de la OEG que:

(1) encontrara al recurrente incurso en violación del inciso (i) del Art. 3.2 de la Ley de Ética Gubernamental del 1985.

(2) encontrara al recurrente incurso en violación a los incisos (g) y (h) del Art. 4.2 d la LOOEG.

(3) imponga la sanción que entienda adecuada conforme a la discreción otorgada en inciso (c) del Art. 4.7, *supra.*

(4) el archivo de la violación al inciso (h) de la Ley de Ética de 1985.

(5) el archivo de la violación al inciso (s) del Art. 4.2 de la LOOEG.

El 17 de enero de 2024, la OEG adoptó en su totalidad el informe de la OE y ordenó al recurrente a pagar ocho mil dólares ($8,000.00) en multas que se desglosan de la manera siguiente:

1   dos mil dólares ($2,000.00) por violar el inciso (i) del Art. 3.2, *supra.*

2   tres mil dólares ($3,000.00) por cada una de las infracciones a los incisos (g) y (h) de la LOOEG.

No obstante, la OEG desestimó y archivó las imputaciones de violación al inciso (h) del Art. 3.2 y el inciso (s) del Art. 4.2 de la LOOEG.

El recurrente presentó una moción de reconsideración. La agencia denegó la reconsideración.

Inconforme, el recurrente presentó este recurso en el que alega que:

La Resolución Sumaria emitida por la Oficina de Ética Gubernamental es contraria a los principios encarnados en la Cláusula Constitucional que garantiza el debido proceso de ley y que se establecen en la propia ley orgánica de la referida entidad administrativa.

Erró la Oficina de Ética Gubernamental cuando adoptó normas de Procedimiento Civil en este tipo de controversia que deriva del Régimen Sancionador, del Estado.

No solo es improcedente este proceso bajo los preceptos de prescripción y de incuria, sino que desde hace cerca de veinte (20) años la Oficina de Ética Gubernamental había determinado que ese nombramiento era válido en derecho.

Las transacciones de personal efectuadas fueron actos ministeriales que no constituyeron "promociones ni ascensos" que es lo que prohibía la Ley de Ética Gubernamental.

La Oficina de Ética Gubernamental transgredió los términos legalmente establecidos para investigar.

## II.

### A.

### Revisión judicial de las resoluciones de la OEG

Las determinaciones adjudicativas que realiza la OEG no pueden estar sustentadas en inferencias, conjeturas, ni percepciones creadas por denuncias mediáticas, que actúan con influencia externa. Las decisiones de la OEG tienen que cumplir un estándar probatorio claro, robusto y convincente, de manera tal que produzca en el juzgador una convicción permanente de que los asuntos fácticos son altamente probables. La exigencia de ese quantum de prueba tiene el propósito de evitar el automatismo adjudicativo al justipreciar imputaciones éticas sobre empleados públicos. La apariencia de impropiedad por si sola, no es razón para que un funcionario público sea encontrado incurso en violación ética automáticamente. La prueba clara, robusta y convincente es un estándar intermedio de suficiencia de la prueba que, en esencia, es más exigente que el estándar de preponderancia de la prueba utilizado en los casos civiles. No obstante, es menos riguroso que el estándar de más allá de duda razonable. El estándar de prueba clara, robusta y convincente es aquella evidencia que le produce al juzgador de hechos una convicción duradera de que las condiciones fácticas son altamente probables. Este es el estándar utilizado cuando se cuestiona el comportamiento ético de un funcionario público, aun en los casos en que se imputa la simple apariencia de imparcialidad o deshonestidad. Así se supera y descartan todos los planteamientos basados en conjeturas y en relatos a terceros. *OEG v. Martínez Giraud,* 210 DPR 79, 83-84 y 93-97 (2022).

Los tribunales revisores deben conceder deferencia a las decisiones de las agencias administrativas, debido al conocimiento especializado sobre los asuntos ante su consideración. Sus dictámenes gozan de una presunción de legalidad y corrección que subsiste, mientras no se produzca prueba suficiente para derrotarla. La parte que impugna judicialmente las determinaciones de hecho de una agencia tiene el peso de la prueba para demostrar que no están basadas en el expediente o que las conclusiones de la agencia no son razonables. La razonabilidad es el criterio rector al momento de pasar juicio sobre una decisión administrativa. La revisión judicial estará limitada a evaluar si la agencia abusó de su discreción porque actuó de manera arbitraria, ilegal o irrazonable. El alcance del proceso de revisión se ciñe a determinar: (1) si el remedio concedido por la agencia fue el apropiado, (2) si las decisiones de la agencia están basadas en evidencia sustancial que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron correctas. Las determinaciones de derecho de las agencias se revisarán en todos sus aspectos. No obstante, cuando se trata de las leyes y los reglamentos que a la agencia le corresponde poner en vigor, la deferencia cede si: (1) erró al aplicar la ley, (2) actuó arbitraria, irrazonable o ilegalmente o (3) lesionó derechos constitucionales fundamentales. *OEG v. Martínez Giraud,* supra, págs. 88-91.

**B.**

**Resoluciones Sumarias en el Procedimiento Administrativo**

La OEG establece y administra los procedimientos en los que se identifican las violaciones a la ética gubernamental. Su objetivo es prevenir los conflictos de intereses y que se tomen y ordenen las medidas disciplinarias, administrativas o civiles que autorice la ley. No obstante, la OEG debe ejercer esos poderes, después de realizar las correspondientes investigaciones y audiencias en las que los

afectados tengan la oportunidad adecuada de ser oídos y de defenderse. Art. 2.3, 3 LPRA sec. 1855b(ñ).

Las querellas presentadas por la OEG tienen que cumplir con el procedimiento de adjudicación establecido en la Ley de Procedimiento Administrativo Uniforme. Art. 7.2, 3 LPRA sec. 1860a.

La Sección 3.7 de la Ley Núm. 38-2017, 3 LPRA sec. 9647 (b), autoriza la adjudicación sumaria en el procedimiento administrativo. El legislador dispuso expresamente que:

> (b) Si la agencia determina a solicitud de alguna de las partes y luego de analizar los documentos que acompañan la solicitud de orden, o resolución sumaria y los documentos incluidos en la moción en oposición, así como aquellos que obren en el expediente de la agencia, que no es necesario celebrar una vista adjudicativa, podrá dictar órdenes o resoluciones sumarias, ya sean de carácter final o parcial resolviendo cualquier controversia entre las partes, que sean separables de las controversias **excepto en aquellos casos donde la ley orgánica de la agencia dispone lo contrario**.
>
> La agencia no podrá dictar órdenes o resoluciones sumarias en los casos en que (1) existen hechos materiales o esenciales controvertidos, (2) hay alegaciones afirmativas en la querella que no han sido refutadas, (3) surge de los propios documentos que se acompañan con la petición una controversia real sobre algún hecho material y esencial, o (4) como cuestión de derechos no procede.

## C.

### Procedimiento de Investigación de querellas ante la OEG

Cualquier persona puede solicitar a la OEG que inicie una investigación bajo cualquiera de las disposiciones que establece la ley. La querella puede ser anónima o iniciada por la propia OEG. La investigación preliminar tiene que realizarse dentro de los 90 días siguientes a la presentación de la querella. Si la OEG entiende que es necesario realizar una investigación exhaustiva tiene un año para culminarla a partir de la culminación de la investigación preliminar. Ambos términos son de estricto cumplimiento y pueden prorrogarse

por justa causa noventa días o un año respectivamente. Art. 7.1, 3 LPRA sec. 1860.

**D.**

### Artículo 3.2(i), 3 LPRA sec. 1821 de la derogada Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico de 1985, Ley Núm. 12 de 24 de julio de 1985

El Artículo 3.2(i), 3 LPRA sec. 1821, de la derogada Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico de 1985, Ley Núm. 12 de 24 de julio de 1985, establece la prohibición siguiente:

> Ningún funcionario público o empleado público **podrá nombrar**, promover o ascender a un puesto de funcionario o empleado público, o contratar por si, o a través de otra persona natural o jurídica, negocio o entidad que tenga interés en la agencia ejecutiva en la que trabaje o tenga facultad de decidir o influenciar a cualquier persona que sea pariente de dicho funcionario o empleado público dentro el cuarto grado de consanguinidad o del segundo de afinidad.
> ..........
>
> Cuando el funcionario público o empleado público con facultad para decidir o influenciar entienda que es imprescindible para el bienestar del servicio público y el buen funcionamiento de la agencia **contratar, nombrar,** promover o ascender, a un pariente suyo dentro de los grados de parentesco antes mencionados, en un puesto de funcionario público o empleado público, **tendrá que solicitar una autorización por escrito** al Director Ejecutivo de la Oficina de Ética Gubernamental donde exponga las razones específicas que justifican tal contrato, nombramiento o ascenso en ese caso en particular, previo a llevar a cabo dicha acción, de conformidad a la reglamentación que adopte la Oficina de Ética Gubernamental.
>
> La Oficina de Ética Gubernamental deberá dentro del término directivo de treinta (30) días desde la fecha de haberse radicado la solicitud de dispensa, autorizar o denegar la misma. La Oficina de Ética Gubernamental notificará al solicitante de la aprobación de la dispensa o de su denegación. En caso de denegar la solicitud de dispensa deberá fundamentar dicha decisión presentando un informe escrito.
> ......
>
> **La prohibición que aquí se establece no será de aplicación** a la situación de un funcionario o empleado público que **nombre,** promueva o ascienda **en un puesto de carrera** en la agencia en que trabaje o sobre la cual ejerza jurisdicción , a un funcionario o empleado público que sea su pariente dentro de los referidos

grados, cuando el funcionario o empleado público, nombrado, promovido o ascendido haya tenido la oportunidad de competir en igualdad de condiciones con otros aspirantes mediante un proceso de selección a base de pruebas, exámenes o evaluaciones de preparación y experiencia, y se haya determinado objetivamente que es el candidato idóneo o mejor calificado en el registro de elegibles para el puesto en cuestión **y el pariente con facultad no haya intervenido en el mismo.** Asimismo, las prohibiciones antes descritas con excepción de la de nombramiento, serán de aplicación a aquellos empleados o funcionarios públicos que advengan a la relación de grado de parentesco dispuestos en este artículo después de su nombramiento o designación.

Según el Artículo 3.6, 3 LPRA sec. 1826 de la ley derogada:

Cualquier funcionario o empleado público de la Rama Ejecutiva que tenga que tomar alguna acción oficial, que constituya una violación a las prohibiciones que establecen los Artículos 3.2, 3.3 y 3.4 de esta ley, deberá informar el hecho a la Oficina de Ética Gubernamental **antes** de tomar dicha acción. El funcionario o empleado público podrá solicitar ser relevado de tener que intervenir con el asunto o participar en las deliberaciones de la agencia que están relacionadas con la materia. Énfasis nuestro.

El Tribunal Supremo de Puerto Rico nos dio en *OEG v Santiago Guzmán 188* DPR 215, 227 (2013) unas directrices para interpretar y aplicar el Art. 3.2 (i), *supra*. La decisión advierte que su redacción es confusa. No obstante, determinó que el legislador tuvo la intención de penalizar a un funcionario o empleado por la mera posibilidad de poder influenciar en el nombramiento de un familiar sin evidencia de que haya ejercido esa influencia. Según el Tribunal Supremo dicho Artículo (1) va dirigido a los funcionarios o empleados públicos, (2) veda las acciones de nombrar, promover, ascender y contratar a un familiar dentro del cuarto grado de consanguinidad o segundo de afinidad en la agencia ejecutiva en la que trabajen o que ejerzan alguna influencia para que se haga, (3) se exige algún tipo de participación o ejercicio de influencia en el proceso de nombrar, promover, ascender y contratar al familiar y (4) la OEG incurre en una acción ultra vires cuando sanciona a un funcionario que tiene el poder de influenciar  a la autoridad

nominadora sin evidencia de que ejerció esa influencia: Artículos 4.2 (g) y (h) de la Ley de Ética Gubernamental, Ley Número 1 de 2012, 3 LPRA sección 1857a (g) y (h). Un servidor público no puede intervenir, directa o indirectamente, en cualquier asunto en el que él tenga un conflicto de interés que resulte en la obtención de un beneficio para él. Tampoco un servidor público puede intervenir directa o indirectamente, en cualquier asunto en el que **un miembro de su unidad familiar, su pariente, su socio o una persona que comparta su residencia, tenga un conflicto de interés que resulte en la obtención de un beneficio para cualquiera de ellos.** Cuando se trate de una de las relaciones antes mencionadas, que haya terminado durante los dos (2) años anteriores al nombramiento del servidor público, este no podrá intervenir, directa o indirectamente, en cualquier asunto relacionado con estos hasta pasados dos (2) años desde su nombramiento.

La prohibición permanece vigente mientras exista un vínculo de beneficio para el servidor público. Una vez termine el vínculo de beneficio, el servidor público no puede intervenir directa o indirectamente en el referido asunto hasta pasados dos (2) años.

Por su parte en inciso (h) del Artículo citado dispone que:

(h) La autoridad nominadora o un servidor público con facultad de decidir o de influenciar a la autoridad nominadora, no puede intervenir directa o indirectamente en el nombramiento, ascenso, **remuneración** o contratación de su pariente. Se entenderá que **un servidor público tiene facultad para decidir o influenciar cuando una ley, reglamento descripción de deberes o designación así lo disponga**. Esta prohibición no aplica cuando a discreción de **la División Ejecutiva**, medien circunstancias excepcionales que hayan sido evaluadas con anterioridad a que la autoridad nominadora o el servidor público con facultad de decidir o de influenciar ejerzan dicha facultad.

Tampoco aplica a un puesto de carrera cuando se cumpla con el principio de mérito a las promociones, ascensos o transacciones de personal requeridas por ley, a las revisiones generales de un plan de clasificación, al recibo de los beneficios del programa de Sección 8, a las subastas públicas en las que concurran

todos los requisitos establecidos por ley, a la participación en los programas de verano ni al recibo de servicios, préstamos, garantías o incentivos otorgados bajo los criterios de un programa estatal federal o municipal. Todo ello siempre que bajo las anteriores excepciones se cumpla con las normas de aplicación general y **que la autoridad nominadora o el servidor público con facultad de decidir o de influenciar no intervenga y lo certifique mediante una inhibición formal.**

El Artículo 1.2 de la Ley Número 1 supra, 3 LPRA sección 1854 contiene varias definiciones pertinentes a la controversia planteada. Estas definiciones son las siguientes:

...

(d) Ascender–Cualquier nombramiento a un cargo o puesto de mayor remuneración económica o jerárquica.

(e) Asunto– Hecho que involucra a partes específicas y en los que el servidor público participa, personal y sustancialmente o que requiere de su decisión aprobación, recomendación o investigación. No incluye la intervención o participación del servidor público en la promulgación de normas o reglamentos de aplicación general o de directrices e instrucciones abstractas que no aludan a situaciones particulares o a casos específicos.

...

(i) Beneficio– Cualquier provecho utilidad lucro o ganancia, sin limitar el término a una ganancia pecuniaria o material, sino que denota cualquier forma de ventaja
....

(n) Conflicto de Intereses –Aquella situación en la que el interés personal o económico está o puede razonablemente estar en pugna con el interés público.

...

(y) Pariente-Los abuelos, los padres, los hijos, los nietos, los tíos, los hermanos, los sobrinos, los primos hermanos, el cónyuge, los suegros y los cuñados del servidor público, así como los hijos y los nietos de su cónyuge.

...

(gg) Servidor Público-Persona en el Gobierno que interviene en la formulación e implantación de la política pública o no, aunque desempeñe su encomienda permanente o temporalmente con o sin remuneración. También incluye al contratista independiente cuyo contrato equivale a un puesto o cargo o que entre sus responsabilidades está la de intervenir directamente en la formulación e implantación de la política pública.

(hh) Unidad familiar-Aquellos cuyos asuntos financieros están bajo el control del servidor público.

### III

El recurrente alega en los dos primeros señalamientos de error que la OEG violó su derecho al debido proceso de ley, porque adjudicó la controversia sumariamente, sin una vista. El señor Alcalde sostiene que la ley orgánica de la OEG exige la celebración de una audiencia, cuando a un servidor público se le imputa que cometió conducta ilícita. Según el recurrente, la reglamentación de la OEG impide la adjudicación sumaria cuando es improcedente en derecho.

La OEG alega que tanto la Ley de Procedimiento Administrativo, como su ley habilitadora y reglamentación interna permiten la adjudicación sumaria siempre que no exista controversia de hechos y que proceda en derecho. La agencia argumenta que el recurrente descansó en meras alegaciones y no derrotó la prueba robusta y convincente que demuestra que cometió las faltas éticas imputadas.

**El señor Alcalde no tiene razón.** Los dos primeros señalamientos de error no son correctos, porque no existe ningún impedimento legal para que la OEG adjudique sumariamente una investigación. Su ley orgánica dispone que el procedimiento de adjudicación de querellas tiene que cumplir con el establecido en la Ley de Procedimiento Administrativo. La sección 3.7 de la Ley Núm. 38, *supra,* autoriza la adjudicación sumaria en el procedimiento administrativo, salvo que la ley orgánica de la agencia disponga lo contrario. La ley orgánica de la OEG no contiene ninguna disposición que impida la adjudicación sumaria. La OEG tiene la facultad de adjudicar sumariamente las querellas éticas cuando no es necesario celebrar una vista adjudicativa, porque no existe controversia de hechos esenciales y procede en derecho.

El recurrente invoca en los señalamientos de errores tres y cinco las defensas de prescripción e incuria. El señor Alcalde alega

que la agencia transgredió los términos para investigar, porque los hechos por los que fue sancionado ocurrieron hace más de veinte (20) años. Según el recurrente, la OEG lo exoneró en el año 2004, de solicitar una dispensa, porque el nombramiento de su primo era en un puesto de carrera. El señor Alcalde aduce que la agencia tiene conocimiento del nombramiento desde que pidió la dispensa. No obstante, alega que no fue hasta el 7 de octubre de 2021 que emitió una orden de acceso inmediata al expediente de personal de su primo. Por último, aduce que la investigación preliminar se excedió del término de noventa (90) días y no se alegó ni probó justa causa para la demora.

**La OEG no cometió los señalamientos de errores tres y cinco.** La defensa incuria como la invoca el recurrente, no aplica por razones obvias. La mayoría de las acciones por la que el recurrente fue sancionado, son posteriores al año 2004. Al recurrente se le atribuyen violaciones a la ley por hechos ocurridos en los años 2006, 2007, 2008, 2009, 2010, 2011, 2015, 2016, 2018, 2020 y 2021. La defensa de incuria no prospera porque es evidente que la agencia no podía investigar en el año 2004 hechos que no habían ocurrido.

El recurrente alega que no podía ser penalizado por firmar el nombramiento de su primo, porque la OEG lo eximió de tener que solicitar una dispensa. El señor Alcalde pretende pasar inadvertido y omite que en su respuesta, la OEG le advirtió que no podía intervenir en el nombramiento de su primo y que debía delegar el asunto tal como dispone la ley. El recurrente interpreta incorrectamente la ley, porque el no tener que solicitar una dispensa, no autoriza a un funcionario público a firmar el nombramiento de un pariente en un puesto de carrera. Por el contrario, la prohibición de intervenir está expresamente establecida en el último párrafo del Artículo 3.2, *supra*. El legislador dispuso textualmente que *el pariente con facultad no haya intervenido en el*

*mismo,* en referencia al nombramiento de un pariente en un puesto de carrera. El texto de la ley es claro. La ley establece que en esos casos no hay que solicitar una dispensa, pero sí es necesario que el pariente con facultad no intervenga. Tampoco podemos pasar por alto que el recurrente es Alcalde desde el año 2001, que conoce la Ley de Ética porque ha tomado seminarios sobre la actual y la derogada ley y que ni siquiera la ignorancia de las leyes lo exime de su cumplimiento. No obstante, el recurrente firmó el nombramiento de su primo el 1 de junio de 2004, contrario a lo que establece expresamente la derogada ley y sin haber recibido aún la respuesta de la OEG a la solicitud de dispensa.

Las alegaciones del recurrente de que la OEG conocía sobre el nombramiento desde el 28 de mayo de 2004, cuando pidió la dispensa, no son ciertas. El señor Alcalde firmó el nombramiento de su primo hermano el 1 de junio de 2004. Cuando la agencia emitió su respuesta el 25 de octubre de 2004, desconocía que el recurrente ya había nombrado a su primo hermano. La OEG decidió conforme a la evidencia que le proveyó el recurrente. El señor Alcalde proveyó una comunicación en la que le delegó a la Directora de Recursos Humanos todo el procedimiento de evaluación y reclutamiento para cubrir los puestos de policía municipal y una certificación **del 8 de septiembre de 2004** en la que el Alcalde indica que no tuvo participación alguna en el proceso de reclutamiento y solicitud de candidatos para la convocatoria en la que participaba su primo hermano. El recurrente certificó algo que no era cierto, porque el **1 de junio de 2004** ya había firmado el nombramiento de su primo. Sin embargo, no proveyó esa información al foro recurrido. La OEG no se enteró en el año 2004 del nombramiento, porque el recurrente omitió esa información. Por el contrario, la información que el recurrente le dio a la OEG llevó a la agencia a entender que el Alcalde no intervino en el nombramiento de su primo y que cumplió con la

ley. No es hasta el **18 de abril de 2022** que la OEG adviene en conocimiento que el recurrente nombró a su primo hermano el 1 de junio de 2004. La agencia conoció ese hecho, en el transcurso de una auditoria que realizó en el municipio. El término de noventa (90) días para la investigación preliminar que confiere la ley venció **el 18 de julio de 2022, si lo contamos a partir del 18 de abril de 2022.** La OEG tenía un (1) año para realizar la investigación exhaustiva, a partir del 18 de julio de 2022. Dicho término venció el 18 de julio de 2023. La querella se presentó el 28 de julio de 2022. Este escenario hace obvio que la querella se presentó a tiempo.

El recurrente alega en el cuarto señalamiento de error que fue sancionado, por actos ministeriales que no violentan el Artículo 3.2 (i), *supra,* porque no están encaminados a conceder una promoción o ascenso a un pariente. Según el recurrente, el Artículo citado no impide la aprobación de otros asuntos administrativos, como la concesión de licencias por vacaciones.

La OEG sostiene que el recurrente fue sancionado por intervenir directamente con el nombramiento de un pariente, debido a que firmó el nombramiento de su primo hermano. Según la OEG el recurrente no fue sancionado por intervención en asuntos administrativos de un pariente, porque ese señalamiento fue archivado. La agencia aduce que su decisión está basada en prueba clara, robusta y convincente que demuestra que el recurrente intervino directamente en el nombramiento de un pariente. La OEG alega que el recurrente firmó el nombramiento en el año 2004 y que desde el año 2012 intervino en otros asuntos y transacciones de personal, como la firma de aumentos de sueldo y la concesión de pasos por mérito, contrario a lo establecido en los incisos (g) y (h) del Artículo 4.2 de la *Ley de 2012.*

El expediente administrativo considerado por la OEG incluyó la evidencia documental siguiente. El 28 de mayo de 2004 el

recurrente pidió una dispensa, a través de Oficina de Administración de Recursos Humanos del Municipio de Rincón, para el nombramiento de su primo, Jason Obrian López Noriega como policía municipal. Pág. 46 del apéndice. El 1 de junio de 2004 el recurrente firmó el nombramiento de Jason Obrian López Noriega como policía municipal. Pág. 50 del apéndice. El 25 de octubre de 2004 la OEG emitió su respuesta basada en una comunicación del 18 de noviembre de 2003, en la que el querellado delegó a la Directora de la Administración de Recursos Humanos del Municipio de Rincón, Carmen M. Brignoni Santoni, todo el proceso de evolución y reclutamiento para los puestos de policía municipal y en una certificación del 8 de septiembre de 2004, en la que **el querellado indicó que no tuvo participación alguna en el proceso de reclutamiento y selección de candidatos para dicha convocatoria en la que fue seleccionado su primo. Véase,** Determinación de hecho número 10 del Informe de la Examinadora. La OEG respondió que no se necesita una dispensa cuando el nombramiento es en un puesto de carrera.

No obstante, en su respuesta la OEG advirtió al recurrente que, aunque la dispensa no era necesaria, porque el nombramiento era para un puesto de carrera. era necesario que

> 1. la persona a ser nombrada o ascendida haya competido en igualdad de condiciones con otros aspirantes mediante un proceso de selección a base de pruebas, exámenes o de evaluaciones de preparación o experiencia
>
> 2. se haya determinado objetivamente que esa persona es el candidato idóneo o mejor calificado en el Registro de Elegibles para el puesto en cuestión y
>
> **3. el funcionario o empleado con facultad para decidir o influenciar no haya intervenido en forma alguna en el anterior proceso. Página 48.**

El expediente ante la consideración del TPI incluye prueba robusta y suficiente para adjudicar sumariamente que el recurrente violó el Artículo **3.2** (i), supra, de la derogada ley. El recurrente tiene

razón cuando alega que el 25 de octubre de 2004 la OEG le contestó que no se necesita una dispensa para nombrar a un pariente en un puesto de carrera. Sin embargo, omite que la aplicación de esa excepción está sujeta al cumplimiento de los tres (3) requisitos contenidos en el propio Artículo 3.2(i), *supra.* La OEG le advirtió expresamente al recurrente que **el funcionario o empleado con facultad para decidir o influenciar no podía haber intervenido en forma alguna en el anterior proceso. El recurrente fue advertido de la necesidad de no intervenir como Alcalde de forma alguna en el proceso administrativo que se llevaba a cabo para el nombramiento del señor López Noriega. El Alcalde también fue advertido que tenía que delegar en una persona con autoridad plena para actuar la facultad de pasar juicio, recomendar y/o tomar decisiones sobre dicho nombramiento y de futuras transacciones relacionadas a su primo. Determinación de hecho número 11 del Informe.**

Sin embargo, es un hecho que el recurrente no esperó recibir la respuesta de la OEG, porque el 1 de junio de 2004 firmó el nombramiento de su primo como policía municipal. La conducta del señor Alcalde violó el Artículo 3.2(i) que impide al pariente con facultad intervenir en el nombramiento de un familiar en el cuarto grado de consanguinidad. El recurrente pretende soslayar el cumplimiento de la ley, con el argumento de que la OEG le exoneró de solicitar una dispensa. Sus argumentos no nos convencen, porque el Artículo 3.2 (i) condiciona el nombramiento de un pariente a un puesto de carrera, sin necesidad de una dispensa a que el pariente con la facultad de nombramiento no haya intervenido. El recurrente pretende soslayar su falta ética con el argumento de que su actuación fue ministerial. Tal argumento no puede prosperar, porque la intervención del señor Alcalde en el nombramiento de su primo estaba expresamente prohibida por la ley de ética vigente a

esa fecha. El propio recurrente informó a la agencia que había delegado el asunto a la Directora de Recursos Humanos y certificó que no había intervenido de forma alguna en el nombramiento. Sin embargo, cuando hizo esa certificación, ya había firmado el nombramiento.

El expediente administrativo cuenta con la prueba robusta y convincente de que el recurrente violó el Artículo 4.2 (g), supra. Según consta en el Informe de la OE, del año 2012 al presente el recurrente aprobó en cuatro (4) ocasiones distintas las licencias de vacaciones de su primo hermano, firmó un informe de cambio en el que se evidencia la concesión de un aumento de sueldo y le otorgó tres (3) pasos por mérito. No existe controversia de que el recurrente violó el Artículo 4.2 (g) porque quedó demostrado que se configuraron todos sus elementos. El Artículo citado impide que un servidor público intervenga directa e indirectamente en cualquier asunto en el que un pariente tenga un conflicto de interés que resulte en la obtención de un beneficio para cualquiera de ellos. Los hechos probados y no controvertidos demuestran que el recurrente en sus funciones como servidor público y Alcalde del Municipio de Rincón intervino directamente en asuntos en los que tenía un conflicto de interés, porque estaban relacionados a la concesión de beneficios para un pariente en el cuarto grado de consanguinidad, que es su primo hermano y debido a su intervención, el pariente obtuvo como beneficios la concesión de licencias de vacaciones de treinta (30) días, un aumento salarial y tres (3) pasos por mérito.

La OEG tuvo ante su consideración la evidencia robusta y convincente requerida para establecer que el señor Alcalde violó el Artículo 4.2 (h), *supra.* Dicho Artículo prohíbe que la autoridad nominadora o un servidor público con facultad de decidir o influenciar a la autoridad nominadora, intervenga directa o indirectamente en el ascenso o remuneración de su pariente.

Aunque, como excepción, la prohibición no aplica a los puestos de carrera, ni a las promociones o ascensos requeridos por ley, el legislador hizo claro que el servidor público con facultad de decidir o de influenciar no podrá intervenir y tendrá que certificarlo mediante una inhibición formal.

La violación al Artículo 4.2 (h), *supra,* se cometió porque el recurrente, en el ejercicio de sus funciones en el servicio público, como Alcalde, intervino directamente en la remuneración y concesión de ascensos y para beneficio de su primo hermano. Aunque el puesto de policía municipal es de carrera y dando por hecho que las intervenciones fueron sobre asuntos requeridos por ley, **el legislador hizo claro que aún en esas circunstancias la autoridad nominadora y el servidor público con facultad de decidir o influenciar no puede intervenir. Además, tiene que certificarlo en una inhibición formal.** El Alcalde no se abstuvo de intervenir ni presentó una inhibición formal como lo requiere el Artículo 4.2 *supra.* Según la prueba presentada y no controvertida, el 1 de julio de 2016 el recurrente autorizó un aumento de ciento cincuenta dólares ($150.00) mensuales en un Informe de cambio especial. El 22 de junio de 2021 concedió tres (3) pasos por mérito a su pariente de cuarto grado de consanguinidad. Los aumentos de sueldo y pasos que otorgó el Alcalde constituyen un ascenso, porque la ley establece que son un incremento de salario. El Alcalde violó el inciso (h) porque es un hecho incontrovertido que intervino directamente en la concesión de ascensos a un pariente en cuarto grado.

Así pues, conforme a lo antes expuesto concluimos que el recurrente incurrió en la conducta prohibida en los Artículos 3.2 (y), 4.2 (g) y 4.2 (h) de la Ley de Ética Gubernamental.

**IV**

Se confirma la resolución recurrida.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

El Juez Pérez Ocasio disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>**Recurrido**<br><br>v.<br><br>CARLOS D. LÓPEZ BONILLA<br><br>**Recurrente** | **KLRA202400089** | Revisión Judicial (Ley de Ética Gubernamental)<br><br>Sobre: Violación a los Incisos (g), (h) y (s) del Artículo 4.2 de la Ley 1-2012, según enmendada, y a los Incisos (h) e (i) del Artículo 3.2 de la Ley Núm. 12 del 24 de julio de 1985<br><br>Caso Número: 23-17 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

**VOTO DISIDENTE JUEZ PEREZ OCASIO**

Aunque considero el análisis de mis compañeras Juezas uno sobrio y responsable, *difiero* con gran miramiento sobre el resultado de este.

Deseo comenzar señalando que, luego de evaluar detenidamente los hechos y circunstancias del caso, relevante al Hon. Carlos López Bonilla, no percibo malignidad en las actuaciones de este. No obstante, lo cierto es que, independientemente de las intenciones – o la falta de estas – las personas, y aún más los servidores públicos, vienen obligados a cumplir con lo establecido en la Ley.

Las imputaciones hechas contra el recurrente surgen de dos (2) estatutos, a saber, la derogada Ley de Ética Gubernamental del Estado Libre Asociado de Puerto Rico de 1985, Ley Número 12 de 24 de julio de 1985, en adelante, Ley Núm. 12-1985, 3 LPRA ant. sec. 1801 *et seq.* y la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley Número 1 de 3 de enero de 2012, en adelante, Ley Núm. 1-2012, 3 LPRA sec. 1854 *et seq.* Nos resulta evidente que entre una Ley y la otra, las actuaciones

reseñadas en la opinión mayoritaria demandan una evaluación distinta. Es decir, y a modo de ejemplo subrayamos que, solo el estatuto vigente requiere una inhibición formal.

Reconocemos que la agencia en cuestión tiene la facultad de resolver de manera sumaria. Sin embargo, no diviso en el dictamen recurrido un análisis diferenciado y atemperado sobre las actividades ministeriales que se repitieron durante casi veinte (20) años, a la luz del derecho aplicable *antes y después* del año 2012. Aunque entiendo que los actos del recurrente pudieran incidir bajo la Ley Núm. 1-2012, es mi apreciación que estos mismos hechos posiblemente no violentan la derogada Ley Núm. 12-1985.

Esta conclusión obedece a mi evaluación del Artículo 3.2 de la Ley Núm. 12-1985, supra, ant. sec. 2011 y el Artículo 4.2 de la Ley Núm. 1-2012, supra, sec. 1857. A través de ellos, el legislador busca prohibir, en síntesis, que un servidor público intervenga con los intereses de un pariente. En ambos estatutos, se plasmó como excepción a esta prohibición los puestos de carrera, como el del primo-hermano del recurrente.

Ahora bien, ambas leyes señalan condiciones distintas para que la mencionada excepción sobre los nombramientos de carrera pueda prevalecer. En el caso de la derogada Ley Núm. 12-1985, esta establecía la necesidad de tres (3) circunstancias para que un servidor público con facultad para nombrar, promover o ascender, pudiera así hacerlo en beneficio de un pariente con un puesto de carrera: 1) competencia en igualdad de condiciones con los demás aspirantes, 2) determinación a base de mérito y 3) que el pariente con facultad no haya intervenido en este proceso de evaluación. Por su parte, la Ley Núm. 1-2012 requiere que el pariente con facultad de decidir o influenciar, se abstenga de intervenir y así lo certifique.

La opinión mayoritaria reseña la divergencia entre estos criterios estatutarios. Sin embargo, a mi juicio, no se logra exponer

con meridiana claridad por qué las actuaciones del recurrente – las cuales nunca estuvieron dirigidas a favorecer a su primo-hermano sobre los demás policías municipales – incumplen con ambos estatutos. Por ello, este Juez entiende que el foro administrativo no debió resolver sumariamente, de forma que los hechos, los cuales se extienden por un periodo significativo de tiempo, pudiesen ser evaluados bajo el crisol adecuado a la normativa vigente que, por cierto, varió.

Por entender que, en este caso particular, la agencia recurrida debió celebrar una vista adjudicativa, *disiento*.

En San Juan, Puerto Rico, a    de septiembre de 2025.


**ALBERTO LUIS PEREZ OCASIO**
Juez de Apelaciones